IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| Delphine Seldon,<br>    Plaintiff,<br><br>v.<br><br>City of Chicago,<br>    Defendant. | Case. No. 14 C 7455<br><br>Judge Ronald A. Guzmán |

## MEMORANDUM OPINION AND ORDER

Delphine Seldon ("Plaintiff") filed suit against the City of Chicago alleging race, sex, and age discrimination. The City moves for summary judgment on all remaining claims [62], which the Court grants for the reasons stated below. Civil case terminated.

## STATEMENT

### I. Facts

Despite having been provided in open court the notice to pro se litigants who are opposing motions for summary judgment (Dkt. # 61), Plaintiff failed to comply with Local Rule 56.1. "Even pro se litigants such as [Plaintiff] must follow the Rules of Civil Procedure." *Townsend v. Alexian Bros. Med. Ctr.*, 589 F. App'x 338, 339 (7th Cir. 2015). Plaintiff did not file a brief in response to the City's summary judgment motion, nor did she respond to the City's statement of undisputed facts. Instead, she filed only what appears to be a statement of additional facts she wants the Court to consider. None of Plaintiff's facts, however, are supported by citations to the record; therefore, the Court will not consider them. *See Lumpkins-Benford v. Allstate Ins. Co.*, 987 F. Supp. 2d 807, 812 (N.D. Ill. 2013) (disregarding "several of the 'paragraphs' in Plaintiff's statement of additional facts, which . . . contain multiple paragraphs, are speculations and legal arguments or are unsupported by any submitted evidence.") Because Plaintiff failed to properly respond to the City's statement of facts, those facts are deemed admitted. *See Perez v. Wallis*, 77 F. Supp. 3d 730, 737 (N.D. Ill. 2014) (deeming admitted the plaintiff's statements of fact where pro se defendants received the notice required for pro se litigants but failed to comply).

Plaintiff is an African American female and was 51 years old in October 2013. (Def.'s Stmt. Facts, Dkt. # 64, ¶ 4.) Plaintiff has been employed by the City of Chicago in the Department of Streets and Sanitation ("DSS") since December 1999, and has held the title Sanitation Laborer since 2003. (*Id.*) Plaintiff alleges that the City discriminated against her based on her race and sex in violation of Title VII and based on her age in violation of the ADEA when her supervisor Michael LaCoco ("LaCoco") denied her "barricade certification" and DSS reassigned her out of the Bureau of Traffic Services ("Traffic Services") to the Bureau of

Sanitation ("Sanitation"), which Plaintiff alleges is "more demanding than barricades used for parades." (*Id.* ¶ 6.) In his March 11, 2016 Order, Magistrate Gilbert granted the City's Motion to Bar and limited Plaintiff from asserting new acts of discrimination not pleaded in her Complaint, and also barred her from introducing additional witnesses identified in her untimely supplemented interrogatory answers. (*Id.*)

In 2006, Plaintiff, along with several other Laborers, was reassigned from Sanitation to Traffic Services. (*Id.* ¶ 7.) In Traffic Services, Plaintiff's duties primarily included loading, unloading, and assembling blue barricades and iron barricades for various parades and special events throughout the City as needed. (*Id.* ¶ 8.) In addition, she was assigned other duties as necessary. (*Id.* ¶ 9.) For example, when she was not setting up barricades or posting signs, she may have been assigned to "the garage" located at 1717 W. Pershing Road, Chicago, where she, along with other employees in her group, helped repair broken blues and irons, as well as clean up the garage on a rotation basis. (*Id.*) In July 2013, DSS sent out a memorandum notifying all Laborers throughout the department that in order to work on barricades, Laborers had to be "certified." (*Id.* ¶ 10.) LaCoco examined Plaintiff and the other Laborers in Traffic Services as they worked in the field, and if he did not certify them, he gave them the option of testing at the Laborers' training center, where all the other Laborers from DSS were tested. (*Id.* ¶ 11.) On October 17, 2013, LaCoco observed Plaintiff while in the field, and because she could not perform all of the tasks required when handling barricades (specifically, stacking the irons), LaCoco did not certify her in barricades. (*Id.* ¶ 12.) Plaintiff alleges that LaCoco failed her because she could not "stock the bottom," but she felt that her prior experience working on iron barricades was "test enough." (*Id.* ¶ 13.)

LaCoco gave Plaintiff another opportunity and informed her that she should attempt the test again at the training center on Saturday, October 19, 2013. (*Id.* ¶ 14.) LaCoco told her a union representative would conduct the test at the training center and LaCoco would accept the results of that test. (*Id.*) Plaintiff refused to attend the certification testing at the training center on October 19, 2013. (*Id.* ¶ 15.) DSS transferred Plaintiff, along with two other Laborers—Lois Tyler, a Black female, and Clarence Andrews, a Black male, who also failed the barricade certification—to other Bureaus where they could perform other duties within their Sanitation Laborer job classification. (*Id.* ¶ 16.)

## II. Summary Judgment Standard

Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *Spurling v. C & M Fine Pack, Inc.*, 739 F.3d 1055, 1060 (7th Cir. 2014). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In determining whether a genuine issue of material fact exists, this Court must construe all facts and reasonable inferences in the light most

favorable to the nonmoving party. *CTL ex rel. Trebatoski v. Ashland Sch. Dist.*, 743 F.3d 524, 528 (7th Cir. 2014).

III. **Analysis**

<u>Age, Race and Sex Discrimination</u>

With respect to the race and sex discrimination claims, "[a] plaintiff seeking relief under Title VII can prove discrimination using the 'direct' method or the indirect, burden-shifting method outlined by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)." *Van v. Peters*, No. 08 C 4718, 2010 WL 2609646, at *4 (N.D. Ill. Jun. 24, 2010).

To prove discrimination in violation of the ADEA, Plaintiff must establish that the defendant subjected her to an adverse employment action because of her age. *See Van Antwerp v. City of Peoria*, 627 F.3d 295, 297 (7th Cir. 2010). In other words, age must be the but-for causation for the alleged adverse action. *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 276 (2009). As with the race and sex discrimination claims, Plaintiff may attempt to prove age discrimination by either the direct or indirect methods of proof. *Van Antwerp*, 627 F.3d at 297.

"A plaintiff proceeding under the direct method survives summary judgment by creating triable issues as to whether discrimination motivated the adverse employment action." *Nagle v. Vill. of Calumet Park*, 554 F.3d 1106, 1114 (7th Cir. 2009). Under the direct method, a plaintiff can establish discriminatory intent by relying on direct or circumstantial evidence that the decisionmaker acted for a prohibited reason. *Rogers v. City of Chi.*, 320 F.3d 748, 753–54 (7th Cir. 2003); *see also Atanus v. Perry*, 520 F.3d 662, 671 (7th Cir. 2008) ("The focus of the direct method of proof. . . is not whether the evidence offered is 'direct' or 'circumstantial' but rather whether the evidence 'points directly' to a discriminatory reason for the employer's action."). Relevant circumstantial evidence includes suspicious timing, ambiguous statements, behavior toward or comments directed at other employees in the protected group, evidence, whether or not rigorously statistical, that similarly situated employees outside the protected class received systematically better treatment, or evidence that the employer offered a pretextual reason for an adverse employment action. *Alexander v. Casino Queen, Inc.*, 739 F.3d 972, 979 (7th Cir. 2014).

As already noted, Plaintiff failed to file a brief in response to the City's motion for summary judgment. Accordingly, any arguments she has in opposition to the City's request for judgment are waived. *See Yang v. Fedex Freight, Inc.*, No. 15 CV 1037, 2016 WL 3444219, at *6 (N.D. Ill. June 23, 2016) ("Because a failure to respond to an argument constitutes waiver, summary judgment is granted in defendants' favor on those claims.") Even assuming, however, that the Court were to consider the allegations Plaintiff made in her complaint and her statement of material facts, she fails to point to any evidence precluding summary judgment in the City's favor.

As an initial matter, Plaintiff has no direct evidence of discrimination and admits that "no one made [purportedly discriminatory] comments in her presence." (Pl.'s Stmt. Facts, Dkt. # 66, ¶ 17.) She asserts that Mike Vetos, who Plaintiff says is a relative of and "highly regarded" by LaCoco, asked her "How long are you going to do this?" (*Id.* ¶ 23.) But Vetos was not her supervisor, and there is no evidence that the comment had anything to do with her transfer or that Vetos had any input with respect to LaCoco's decision not to certify Plaintiff on the barricades and transfer her out of Traffic Services. *See Roberts v. Columbia Coll. Chicago*, No. 15-2079, 2016 WL 2641968, at *9 (7th Cir. May 6, 2016) ("To prevail on his cat's paw theory, [the plaintiff] has to show that [the decisionmaker's] decision was 'decisively influenced by someone who was prejudiced.'") (citation omitted); *Harper v. C.R. England, Inc.*, 687 F.3d 297, 309 (7th Cir. 2012) (finding plaintiff's reliance on co-worker comments not linked to the ultimate decision maker was insufficient to avoid summary judgment). With respect to other circumstantial evidence, Plaintiff asserts that she was "aware of [unspecified] comments concerning her," but this statement is unsupported by any evidence. Plaintiff also alleges that she was "replaced by men in job," but does not name the men who replaced her. (Compl., Dkt. # 1, ¶ 13.) To the extent that she makes reference to Stewart Kelly and Manuel Floretiz, it is not clear that these men replaced her nor does she point to any record support for an assertion that they were treated more favorably than her because they are men.

Plaintiff claims she "overheard another laborer that works on another truck tell the laborer on [her] truck that he was getting [her] job. I understand that for this reason this is why [LaCoco] denied my certification because of a promise made to his friend, and the only way to do this is to transfer me out to sanitation." (*Id.*) But again, Plaintiff did not name the laborer she overheard or any witnesses to that conversation, and only states that "the use of video in recent cases of corruption would prove the Plaintiff's case." (Pl.'s Stmt. Facts, Dkt. # 66, ¶ 19.) Even if LaCoco had replaced Plaintiff solely because he wanted to give the job to a friend, this fact does not establish or point directly to race, sex, or age discrimination.

In addition, Plaintiff provides the names of several co-workers who were younger than her, but fails to provide their age or state how they were treated differently from her. Don Brown, one of Plaintiff's African-American coworkers in Traffic Services who she mentions, was age 44 in October 2013, and LaCoco certified him to work barricades. (Def.'s Stmt. Facts, Dkt. # 64, ¶ 21.) Kenny Edwards, another of Plaintiff's African-American coworkers in Traffic Services she mentions, was age 53 in October 2013, and LaCoco also certified him. (*Id.* ¶ 22.) Finally, Plaintiff's implication that Lois Tyler was treated more favorably than her because LaCoco honored her request to be transferred out of barricade work for health reasons is equally unavailing as it is both irrelevant and unsupported by the record. Thus, Plaintiff has failed to make any showing of discrimination under the direct method.

"The default method of proving discrimination [*i.e.*, indirect method] is the burden-shifting approach of *McDonnell Douglas*, which requires the plaintiff to first make a prima facie showing that '(1) she is a member of a protected class; (2) she met her employer's legitimate job expectations; (3) she suffered an adverse employment action; and (4) similarly

situated employees outside of the protected class received more favorable treatment.'" *Kuttner v. Zaruba*, 819 F.3d 970, 976 (7th Cir. 2016). Here, Plaintiff fails to establish that she suffered an adverse employment action, was meeting her employer's legitimate job expectations, or that similarly-situated employees who were not African-American or female were treated more favorably.

IV. **Conclusion**

Because Plaintiff fails to meet her burden of establishing a genuine dispute of material fact with respect to any of her discrimination claims, the City's motion for summary judgment is granted. Civil case terminated.

July 7, 2016

Ronald A. Guzmán
United States District Judge